Laurel Headley (Cal. Bar 152306)
ARGUEDAS, CASSMAN & HEADLEY, LLP
803 Hearst Avenue
Berkeley, CA 94710
headley@achlaw.com
Telephone:   (510) 845-3000
Facsimile:   (510) 845-3003

*Counsel for Defendant Shaun Bridges*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.  CR 17-448 RS |
| Plaintiff, | DEFENDANT SHAUN BRIDGES' SENTENCING MEMORANDUM |
| v. | |
| SHAUN BRIDGES, | DATE:  November 7, 2017<br>TIME:  2:30 p.m.<br>COURTROOM: Hon. R. Seeborg |
| Defendant. | |

## I.  INTRODUCTION

On November 7, 2017, Mr. Bridges will come before the Court for sentencing for one count of money laundering in violation of 18 U.S.C. § 1957, at which time he will ask the Court to impose a sentence of two years imprisonment, one of the years to be served concurrent to the sentence he is now serving in case number CR-15-319 RS. The parties and probation agree that Mr. Bridges' total offense level under the guidelines is 21, which in a criminal history category II results in a sentencing range of 41 to 51 months.  At sentencing, it is expected that the government will ask the court for

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

a below-guideline sentence, taking into consideration Mr. Bridges' cooperation in the recovery of the stolen bitcoin.   Probation recommends a variance from the guidelines to a sentence of two years imprisonment, consecutive to the sentence he is now serving, without taking into consideration Mr. Bridges' cooperation.

Mr. Bridges is serving a 71 month sentence, which was imposed by this Court on December 7, 2015.  A two year sentence, with one year to be served consecutive to his prior sentence, takes into consideration the overlap in time and circumstances between this case and his last one, as well as Mr. Bridges' cooperation with the government. Given Mr. Bridges personal history and characteristics, one year imprisonment in addition to the substantial sentence his is already serving is "sufficient, but not greater than necessary" to achieve the Court's sentencing objectives.  18 U.S.C. § 3553(a).

## II.    PERSONAL BACKGROUND

Prior to the conduct that brought him before the Court, Mr. Bridges had distinguished himself both educationally and professionally. Growing up in a military family that moved around a lot, he had few financial or community resources to support his aspirations, and his accomplishments were mostly the product of hard work and determination.  Throughout his life, the quality of his work distinguished him, and earned him the respect of noteworthy institutions and individuals.  The particulars of Mr. Bridges' background were briefed in his last case (see, CR 15-319 RS, Dkts. 93 and 93-1 to 93-10;) and the PSR in this case (Dkt. 11, ¶ 42-64), and will not be repeated here, but the some salient facts bear highlighting.

Mr. Bridges left high school at 16, because it was not challenging enough, and enrolled in college early.  (Dkt. 11, ¶ 55.)  In 2005, he earned his B.A. in Anthropology

with a 3.89 GPA and in 2009 earned a Masters in Administration of Justice, with a GPA of 3.97. (Dkt. 11, ¶ 56.) His career included law enforcement positions with the Laurel, Maryland Police Department, Anne Arundel County Sheriff's Department, Maryland State Police, and U.S. Secret Service. (Dkt. 11, ¶¶ 61-64.) In those positions, he received the following distinctions:

| | Award: | Issued By: | Date | Dkt.[1] |
|---|---|---|---|---|
| 1 | Certificate of Appreciation | Laurel Police Department | 10-28-2004 | 93-2 |
| 2 | Sheriff's Citation | Laurel Police Department | 10-28-2004 | 93-2 |
| 3 | American Legion Post 60's 2004 Public Safety Officer of the Year | The American Legion, Laurel Police Department | 10-28-2004 | 93-4 |
| 4 | Official Citation | Maryland House of Delegates | 10-28-2004 | 93-4 |
| 5 | Official Citation | The Senate of Maryland | 10-28-2004 | 93-5 |
| 6 | Officer of the Year | | 10-28-2004 | 93-8 |
| 7 | 2004 Sherriff's Unit Citation | Anne Arundel County Sherriff's Office | 4-7-2005 | 93-5 |
| 8 | Sheriff's Citation | Sheriff of Anne Arundel County, Maryland | 12-9-2006 | 93-2 |
| 9 | First in Class | Maryland Troopers Association | 12-22-2006 | 93-6 |
| 10 | DUI Award | State of Marylan | 2007 | 93-8 |
| 11 | Commander's Award | Maryland State Police, Annapolis Barrack | 2008 | 93-6 |
| 12 | Commander's Award | Maryland State Police | 5-1-2009 | 93-3 |
| 13 | Driver Training Award | Department of Homeland Security | 1-19-2010 | 93-3 |
| 14 | Academic Award | Department of Homeland Security | 1-19-2010 | 93-3 |
| 15 | Expert | United States Secret Service | 5-6-2010 | 93-7 |
| 16 | Academic Achievement Award | United States Secret Service | 6-4-2010 | 93-7 |

---

[1] CR 15-319 RS.

*DEFENDANT SHAUN BRIDGES' SENTENCING MEMORANDUM - 3*

| 17 | Special Agent Training Course | United States Secret Service | 6-4-2010 | 93-2 |
|---|---|---|---|---|
| 18 | Excellence in Physical Conditioning | United States Secret Service | | 93-2 |
| 19 | Traffic Safety is Public Safety M.C.P.A. | Maryland Chiefs of Police | | 93-8 |
| 20 | It All Starts With a Traffic Stop MHSO | | | 93-8 |
| 21 | Ted Wolf Physical Fitness Award | Fraternal Order of Police Lodge 69 | | 93-8 |
| 22 | Maryland State Police Aviation Award | Rotary Club | | 93-9 |

Having achieved this level of recognition at 31 years old, Mr. Bridges had a long and promising future.  Unfortunately, that promise was extinguished by a period of errant decisions and inexplicably bad judgment, beginning with his 2013 theft of bitcoin from the Silk Road, the subject of his first case, and ending with the 2015 theft of 1606 bitcoin, the subject of the instant case.

With a substantial portion of his prison sentence remaining, his prospects for future employment are speculative.  He has lost his home, which was sold while he was in prison (Dkt. 11, ¶ 66), the proceeds of which satisfied his remaining restitution and other debts.  And he lost his wife, who left him shortly after he began serving his prison sentence, a devastating event which he had not anticipated and caused him much anguish.   (Dkt. 11, ¶¶ 47, 52.)

Mr. Bridges' parents, remain supportive, and attest to their son's regrets.   As his mother, Debbie, writes:

 During these past two years while he was incarcerated, I have been in constant communication with Shaun. We talk several times a week. I was able to visit him often in jail at Baltimore, Maryland, but when he was moved to the prison in Terre Haute, Indiana, visiting was made too difficult. It breaks our hearts to read his letters and talk to him on the phone. He has expressed his deep regret and remorse for his actions.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> He feels guilty for what he has put the entire family through these past two years. He had such a bright future and one that he no longer will have.  He has lost credibility in the public eye, which was so important to him. His mistakes have cost him dearly.  He knows his future is uncertain and he expresses concerns about what kind of life he will have as a convicted felon.  He has lost his job, his soul mate (wife), his home, his livelihood, and being close to his family.  In the past 2 years, he has stated several times, if only I could turn back the clock and make better choices than I did.

(See redacted letter from Mr. Bridges' mother, attached as Exhibit A.)

Mr. Bridges' father writes:

> We truly believe that Shaun has already suffered extensively in the public eye, and we believe he is truly despondent regarding what he has put others through, including his family.  I served in South-East Asia during the early 70's but what we're going through now is much worse by far and that's an understatement.

(See redacted letter from Mr. Bridges' father, attached as Exhibit B.)

### III.    OFFENSE CONDUCT

On March 18, 2015, Mr. Bridges, cognizant of an impending investigation into his conduct in connection with the Silk Road investigation, resigned from his job at the U.S. Secret Service.  (Dkt. 11, ¶ 21.)  Upon leaving his office in Baltimore, he took with him the private key to 1,606 bitcoin that had been seized in 2014 in connection with a civil seizure warrant, to which he was the affiant. (*See,* III.1 below for description of that matter.)   As the agent who had taken that bitcoin into evidence and put it in a government bitcoin wallet, Mr. Bridges was the only person with access to that private key. *Id.*  The 1606 bitcoin remained in the government wallet until July 28, 2015, when it was transferred to a digital wallet at a bitcoin exchange known as BTC-e.  These transfers took place in multiple automated transactions in accordance with BTC-e procedures.  Thereafter, 605 bitcoin were transferred to Bitfinex, another bitcoin

exchange, and 1037 were transferred to a hardware wallet.  (Dkt. 11, ¶¶ 17-18.)  At no point were any of the 1606 bitcoin exchanged for fiat currency.

### 1.  Source of the 1606 Bitcoin

As stated above, the 1606 bitcoin that Mr. Bridges stole had been seized by the government pursuant to a civil seizure warrant, which was signed by Mr. Bridges as the affiant on November 18, 2014. (D. Md; 4-mj-2651-SAG, Dkt. 3.)  That warrant authorized the seizure of 5,072 separate accounts at the bitcoin exchange, Bitstamp. Bitstamp supplied the list of those accounts to the government, with a request that the government seize them as part of Bitstamp's effort to comply with FINCEN regulations, because those accounts lacked identifying information of the owners, as required by regulation. *Id.*  Thereafter, a number of those account holders complained that their accounts had been wrongfully seized, and the government and Bitstamp agreed to return those bitcoin to the account owners.  The court ordered that return upon the government's request. (*Id.*, Dkt. 6.)

Among the list of 5,072 accounts, were accounts owned by Carl Force, Mr. Bridges' co-defendant in his prior case.  However, there is no evidence that Mr. Bridges knew Force owned any of the accounts, either at the time he applied for the seizure warrant in 2014, or when he took the 1606 bitcoin on March 18, 2015.

### IV.  COOPERATION WITH THE GOVERNMENT

After being taken into custody, Mr. Bridges reached out to the government in an attempt to resolve this case, and to help recover the bitcoin.  In December of 2016, Mr. Bridges met with the government and gave it information related to the return of all 1606 bitcoin, none of which had been converted to fiat currency and all of which Mr. Bridges

believed was recoverable. [2]   Mr. Bridges met with prosecutors and government agents over the course of two days.  He debriefed on matters related to conduct in both of his cases and has remained available to the government.

## V.   OBJECTION TO THE PSR

As the PSR notes, Mr. Bridges objects to the suggestion that he specifically ordered the 1606 bitcoin to be "tumbled" after it left the government wallet.  (*See*, Dkt. 11, Addendum.)  Mr. Bridges does not dispute that SharedCoin "tumbled" bitcoin or that the bitcoin he deposited at BTC-e was tumbled.  However, as written, paragraph 17 of the PSR suggests that Mr. Bridges personally directed or utilized a tumbler, apart from the tumbling that occurred in connection with BTC-e's protocol.[3]

## VI.   ARGUMENT

The parties and probation agree that Mr. Bridges' total offense level under the advisory guidelines is 21, which results in a sentencing range of 41 to 51 months, given his criminal history category of II.  Probation has recommended a downward variance to 24 months, consecutive to his current sentence.  (Dkt. 11, Sentencing Recommendation, Page 1.)  We join in Probation's recommendation for a variance to two years, but in consideration of Mr. Bridges' cooperation, and other factors discussed below, ask the Court to impose one of those two years to run concurrent to the sentence in his prior case. This sentence adequately addresses the additional conduct involved in this case, at the same time acknowledges (1) Mr. Bridges' cooperation with the government; (2) the over-representation of Mr. Bridges' criminal history category,

[2] The PSR says at the time the government met with Mr. Bridges in December of 2016, it had already retrieved 605 bitcoin from Bitfinex (Dkt. 11, ¶ 18).  However, that fact was not known to Mr. Bridges at the time he met with the government and gave it information to retrieve those bitcoin.
[3] Before sentencing, counsel for Mr. Bridges will discuss with probation possible revisions to this paragraph in order to resolve the objection.

*DEFENDANT SHAUN BRIDGES' SENTENCING MEMORANDUM - 7*

and (3) the similarity in course of conduct between his two cases.  This sentence satisfies the statutory sentencing objective to "impose a sentence sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (*en banc*) (quoting and citing 18 U.S.C. § 3553(a) and (a)(2)).

   **1.  Mr. Bridges' Cooperation is a basis for a Variance and Departure**

   As discussed above, Mr. Bridges' cooperation in retrieving the bitcoin and closing any areas of uncertainty related to the government's investigation in this case, his prior case, and other matters, was substantial, and it is expected that the government will vouch for the value of that conduct at sentencing.  This cooperation serves as a basis for a downward variance as well as a downward departure under the guidelines (5K2.0.)[4]

   We do not suggest that Mr. Bridges should be rewarded for returning that which he wrongfully took, but rather highlight the factors that made Mr. Bridges' cooperation far greater than simple restitution.  Mr. Bridges reached out to the government early and before charging in an effort to turn over the private key and other information, which he knew he alone had.   He pursued an early resolution of the case, and waived venue in the District of Maryland to this district.  In addition to facilitating the return of the bitcoin, he made himself available to prosecutors and agents and gave a full confession to his

---

[4] The plea agreement permits Mr. Bridges to request a departure from the guidelines under 5K2.0. (Plea Agreement, ¶ 15.)

involvement in this case, and submitted himself to unfettered questioning related to his prior case and beyond.

Cooperation with the government that does not fall squarely into a departure under § 5K1.1, can be considered grounds for a variance in consideration of 18 U.S.C. § 3553(a) factors. (*United States v. Zolp*, 479 F.3d 715, 721-722 (9th Cir. 2007.)  It can also support a departure, under 5K2.0,[5] which also acknowledges substantial assistance that does not fall squarely into § 5K1.1. (*See*, *United States v. Sanchez*, 927 F.2d 1092 (9th Cir. 1991) - information provided to assist the government in a civil forfeiture proceeding was outside § 5K1.1's scope because "by its plain language, Section 5K1.1 applies only to assistance provided in the investigation or prosecution of another person." *Id*. at 1094.  Thus, cooperation with the government as a valid basis consideration at sentence is supported by statute and the guidelines, and Mr. Bridges' cooperation, which extended beyond return of the 1606 bitcoin, may be appropriately considered at sentencing under each of these grounds.

### 2.  Criminal History Category II Over-represents Mr. Bridges' Criminal History (§ 4A1.3(b))

Mr. Bridges has no criminal history, apart from his conviction in case number CR 15-319 RS, which puts him in criminal history category II. (§ 4A1.1(a).)  While we do not dispute that that is the proper category, we believe it over-represents his criminal history and a downward departure or variance is warranted.  (§ 4A1.3(b).)   While Mr. Bridges' conduct in his prior case warrants some consideration, the fact that his conduct in his prior case and the instant one encompassed a continuous period without an intervening

---

[5] ¶ 5K2.0 allows for departures for circumstances not otherwise taken into consideration by the guidelines.

criminal justice sentence, is a mitigating factor.  (*See*, VI. 3, below.)  Indeed, had this case been considered relevant conduct to the prior case, Mr. Bridges would have been in criminal history category I.

### 3.  Mr. Bridges' Conduct in the Instant Case and Prior Case Overlap in Time and Course of Conduct

While the instant case includes conduct separate and apart from the conduct charged in Mr. Bridges' first case, there was substantial overlap between those cases in terms of time and course of conduct, such that they represent a distinct and continuous, albeit unfortunate, period in Mr. Bridges' life, and one for which Mr. Bridges has already been punished.  Thus, even though Mr. Bridges appears before the Court now for the second time in a second case, both cases are more accurately viewed as a continuous course of conduct, rather than serial events.

Mr. Bridges was charged in his first case by complaint on March 25, 2015[6], but before those charges had been filed, the March 18, 2015 theft of 1606 bitcoin that is the subject of the instant case had already taken place.  Subsequent transfers of the 1606 bitcoin took place later in 2015, but importantly, ended before the December 7, 2015 sentence in his first case was imposed.  Similarly, there is overlap in the nature of the offenses in both of these cases, such that they satisfy some of the factors for identifying a common scheme or course of conduct for purposes of relevant conduct under § 1B1.3.  § 1B1.3(a).  For instance, whether offenses have common victims, accomplices, purposes, *modus operandi* or include a degree of similarity, regularity or temporal proximity are used to define common scheme and course of conduct.  (*See,* 1B1.3, Application Note 5(B).)  We do not dispute that this case involves conduct separate and

---

[6] CR 15-319 RS; Dkt. 1.

apart from the conduct this Court has already sentenced Mr. Bridges on, but point out the relevance of the temporal and contextual similarities between the cases, which form an imperfect 'relevant conduct,' that warrants consideration when deciding how much (if any) additional punishment is warranted in this case.[7]

This is not to undermine the seriousness of any portion of Mr. Bridges' conduct, and particularly the conduct that took place while he was on pre-trial release.  That conduct, however, has already been accounted for in his sentencing guidelines, which include a 3 points enhancement under § 3C1.3 for conduct while on pre-trial release.  In other words, while Mr. Bridges' recommended guidelines already reflect an enhancement for conduct while on pre-trial release, his guidelines *do not*, reflect the substantial overlap in conduct between his first and second cases.

Lastly, we underscore the fact that all of Mr. Bridges' conduct took place before he was sentenced in his last case.  To the extent that a sentence of imprisonment is designed for the purposes of retribution, incapacitation and deterrence, (*see*, *United States v. Grant*, 664 F.3d 276 (9th Cir. 2011), following, *Tapia v. United States*, 564 U.S. 319, 131 S. Ct. 2382 (2011)), it is expected that the six year sentence Mr. Bridges is already serving will achieve those objectives in the instant cases.

---

[7] The significant portion of the PSR devoted to conduct attributed to Mr. Bridges' last case is illustrative of the overlap in his cases. (Dkt. 11, ¶¶ 6-13.)  Similarly, it appears that at the time of his last sentencing, the government had some awareness that Mr. Bridge had control of additional bitcoin that had not yet been located.  (Dkt. 109; 22:16-21.)

*DEFENDANT SHAUN BRIDGES' SENTENCING MEMORANDUM - 11*

1

## VII.  CONCLUSION

2
 
For the foregoing reasons, Shaun Bridges respectfully requests that this Court

3

4
impose a sentence of two years imprisonment, one year to be served concurrent and

5
one year consecutive to the sentence his is now serving.

6
DATED:  October 31, 2017          Respectfully submitted,

7
_____/s/_____

8
LAUREL HEADLEY
Attorney for Defendant

9
SHAUN BRIDGES

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28