1  BRIAN J. STRETCH (CABN 163973)
   United States Attorney

2  BARBARA J. VALLIERE (DCBN 439353)
3  Chief, Criminal Division

4  WILLIAM FRENTZEN (LABN 24421)
   Assistant United States Attorney
5
   ANNALOU TIROL (CABN 216578)
6  Acting Chief, Public Integrity Section

7  RICHARD B. EVANS (DCBN 441494)
   Trial Attorney
8
         450 Golden Gate Avenue, Box 36055
9        San Francisco, California 94102-3495
         Telephone: (415) 436-7200
10       FAX: (415) 436-7234
         William.frentzen@usdoj.gov; richard.b.evans@usdoj.gov
11

12 Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.: CR 17-0448 RS |
| v. | **UNITED STATES' SENTENCING MEMORANDUM** |
| SHAUN BRIDGES, | Court: Honorable Richard Seeborg |
| Defendant. | Date: November 7, 2017 |
| | Time: 2:30 p.m. |

## INTRODUCTION

The Court will sentence defendant Bridges on November 7, 2017. The government agrees with the Guidelines calculation of the Probation Office in the Presentence Investigation Report ("PSR"). The applicable guideline range is, therefore, 41-51 months of imprisonment. Nonetheless, the government recommends that the Court – having recently sentenced defendant Bridges to serve a sentence of 71 months of imprisonment and because Bridges has come forward to assist the government in recovery of some of the stolen bitcoin (BTC) – vary downward from the applicable Guidelines range. Because the defendant 1) accepted responsibility promptly, 2) assisted the government in recovery of BTC currently worth approximately $6 million, and 3) is already serving a lengthy sentence, the government recommends a sentence of 36 months served consecutive to the current sentence. The government also recommends that the Court order forfeiture of all of the stolen digital currency and/or its current equivalent value.

## FACTS AND ARGUMENT

Defendant Bridges was a trusted law enforcement officer with the United States Secret Service (USSS). In that capacity, he was the affiant for seizures of digital currency pursuant to the nation's forfeiture laws. From Bridges' prior case, this Court is aware of how Bridges chose to stray from enforcing the law to committing crimes while investigating them. Bridges stole massive amounts of digital currency from the Silk Road illegal online marketplace. The government does not seek to reiterate those crimes for which the Court has already imposed an appropriate sentence, but they do set the framework for Bridges' new crimes.

While the government was investigating Bridges' colleague on the Baltimore Silk Road Task Force, defendant Carl Mark Force IV, in November of 2014, Bridges was the affiant for a seizure of approximately 1606 BTC from a digital currency exchange, Bitstamp.[1] On the basis of Bridges' affidavit, a seizure warrant was authorized by a judge in the District of Maryland and it was executed on November 18, 2014. In the course of seizing BTC from Bitstamp, Bridges also seized a large amount of

---

[1] The government seizure of Bitstamp accounts was not based on criminal activity by Bitstamp – and not necessarily any illegal conduct by the account holders – but a seizure based on accounts held at Bitstamp without proper information regarding the customers under appropriate "know your customer" or "KYC" rules.

BTC that Force had illegally obtained from Silk Road and its primary operator, Ross Ulbricht, a/k/a "Dread Pirate Roberts." The government has no evidence that Bridges was aware at the time of the seizure that his seizure had included the BTC illegally obtained by Force.

Once the government was made aware that Bridges had seized BTC that was traceable to Force, however, the government became concerned about the chain of custody of its evidence against Force. At the outset of the seizure, the BTC appeared safely held by the government since the seizure was done by law enforcement and was maintained in a digital wallet with a private key.

By March of 2015, however, the investigation had revealed that Bridges had committed the crimes charged in his earlier case. On March 18, 2015, when Bridges left the employment of USSS, the government was not aware that Bridges retained the private key for the wallet holding the BTC seized from Bitstamp (including the BTC that was evidence against Force). On April 8, 2015, the investigative team requested that USSS move the BTC to a different digital wallet to protect it from Bridges. Due to simple oversight, the BTC was not moved by the government.

Prior to July 28, 2015, Bridges signed a plea agreement with the government regarding the crimes in his prior case. On or about July 28, 2015, Bridges moved the BTC from the digital wallet belonging to the government into a digital currency exchange called BTC-e.[2] The BTC were then transferred in 100 BTC groups out of BTC-e and, eventually, into a hardware wallet owned by Bridges and into an account traceable to Bridges with another digital currency exchange, Bitfinex.

In December of 2015, after the Court had sentenced Bridges but prior to his surrender to the Bureau of Prisons, Bitfinex account holders asked USSS in the District of Maryland to return some of the seized BTC. At that time, USSS discovered that the BTC seized by Bridges were missing. USSS contacted the investigative team prosecuting Bridges. That team initiated this second investigation. By January of 2016, shortly before Bridges was set to report to the Bureau of Prisons, the government prepared and executed a search warrant on Bridges and his residence. Bridges was incarcerated at that time and has been serving his original sentence ever since.

---

[2] BTC-e is believed by the government to be an exchange preferred among money launderers and those who would seek to avoid providing information required by FinCEN to be collected by properly registered money transmitting businesses, in violation of 18 U.S.C. § 1960. *See United States v. BTC-e and Alexander Vinnik*, 16-CR-227 (RS) (N.D. Ca. 2016).

Through its own investigation, the government was able to locate and seize the digital currency in the Bitfinex account.[3] The government was also able to locate the digital currency in the hardware wallet, but without a private key could not possibly access the BTC stored in the hardware wallet.

Bridges then agreed to meet with the government to return all of the stolen BTC. Although the government had recovered the BTC at Bitfinex, Bridges was not aware of that and provided information necessary to recover that account. Bridges also provided the code to be able to access and seize the BTC held in the hardware wallet.

Bridges is only before this Court on the new conduct. Of course, the new conduct was intensified because Bridges committed the new offense while pending resolution of the old case and while on conditions of this Court's pretrial release. Bridges stole from the government that he had already betrayed. All of this demands some additional punishment.

As to the quantity of that additional punishment, the government does believe that a variance is appropriate in this unusual instance. As destructive as Bridges' overall conduct became prior to his incarceration, Bridges has now made the government whole by assisting in the recovery of the stolen BTC. Bridges has also sat down with the government to debrief in a manner that demonstrated far more genuine contrition and remorse than Bridges demonstrated through the course of his original case.

If the instant theft from the government were Bridges' original offense, then the government would likely recommend a harsher sentence for that conduct. If the instant theft from the government had been committed after Bridges had served his full time for the first offense and then been released, then the government would assume that Bridges had not learned the lesson from his initial incarceration and would likely recommend a much harsher sentence. Here, the government is mindful that Bridges committed this second offense during the negotiations and guilty plea for the first offense and, for that reason, the Court could have incorporated this offense into the original sentence.

The government, therefore, does recommend a variance from the applicable range of 41 to 51 months. The government believes that an additional 36 months consecutive to the original 71 month sentence –

---

[3] The Bitfinex account originally held approximately 605 BTC. Some portion of those BTC were liquidated into fiat currency also held in the Bitfinex account through an "auto-trader" function that automatically traded BTC for fiat currency upon certain conditions. The government was able to seize both the remaining BTC and the fiat currency in the account.

for a total sentence of 107 months – is appropriate, but not excessive, to reflect Bridges' overall criminal conduct and to serve as a just sentence in light of Bridges' assistance to the government to recover the stolen funds.

**CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court impose a sentence of 36 months consecutive to Bridges' existing sentence. The government further requests that the Court order forfeiture as to Bridges of the BTC seized by the government.

DATED: November 1, 2017

Respectfully submitted,

BRIAN J. STRETCH
United States Attorney

_____/s/_____
WILLIAM FRENTZEN
Assistant United States Attorney

ANNALOU TIROL
Acting Chief, Public Integrity
Section

_____/s/_____
RICHARD B. EVANS
Trial Attorney

U.S. SENTENCING MEMO.
CR 17-0448 RS                                             4